2002 SD 153

**STATE of South Dakota, Plaintiff and Appellant,**

v.

**Judy Kay JONES, Defendant and Appellee.**

**No. 22281.**

Supreme Court of South Dakota.

Considered on Briefs Aug. 26, 2002.

Decided Dec. 4, 2002.

David R. Nelson, Minnehaha County State's Attorney, Sioux Falls, for plaintiff and appellant.

Bret C. Merkle, Merkle Law Firm, Sioux Falls, for defendant and appellee.

SABERS, Justice.

[¶ 1.] Judy Jones was charged with 4 counts of unlicensed practice of midwifery in connection with her involvement in the at-home births of two children. The State filed a notice of intent to use evidence of an injunction prohibiting Jones from practicing midwifery, a contempt order for violating the injunction, and the treatment and death of one of the children she helped deliver. Jones moved to suppress the evidence and the trial court granted the motion. The State appeals and we affirm.

## FACTS

[¶ 2.] In January 1993, Jones was enjoined from practicing midwifery without a license by the First Judicial Circuit after assisting in the at-home delivery of a child in Union County, South Dakota. Jones was permanently enjoined from "practicing any acts or medical functions of a nurse midwife ... unless and until she becomes licensed under SDCL [ch] 36–9A." She did not obtain a license to practice midwifery as required under SDCL ch 36–9A and violated the injunction by aiding in the at-home delivery of a child in Clay County. In August 1996, the First Judicial Circuit held her in contempt for violating the injunction.

[¶ 3.] Jones appealed the finding of contempt to this Court and we unanimously affirmed. *South Dakota Bd. of Nursing v. Jones,* 1997 SD 78, 566 N.W.2d 142.

[¶ 4.] Jones assisted in two at-home births, one in August 1999 and one in March 2001 in Minnehaha County. On April 18, 2001, Jones was indicted on four counts of unlicensed practice of midwifery in connection with the two at-home births. The State filed a notice of intent to offer specified evidence of the 1993 injunction and 1996 finding of contempt. Jones moved to suppress evidence of the injunction and evidence of one of the children's post-birth treatment and death. The death of the child occurred in the hospital 10 days after the child was removed from Jones' care.

[¶ 5.] Both sides briefed the issues and argued them on October 5, 2001. On February 7, 2002, the trial court suppressed from the State's case-in-chief evidence of the injunction, the contempt order, and the treatment and death of one of the children whose birth she assisted. The court stated that if Jones were to open the door as to the suppressed evidence, the State could request a hearing to determine the relevance and probative value of the evidence. A trial was scheduled for February 26, 2002, but was stayed by order of this Court on February 19, 2002.

## STANDARD OF REVIEW

[¶ 6.] "The decision to admit evidence at trial is a matter within the discretion of the trial court and is reviewed under an abuse of discretion standard." *State v. Chamley,* 1997 SD 107, ¶ 7, 568 N.W.2d 607, 611 (citing *State v. Fowler,* 1996 SD 78, ¶ 12, 552 N.W.2d 92, 94). *See also State v. Klein,* 444 N.W.2d 16, 18 (S.D.1989) (stating, "[o]ur standard of re-

view concerning the trial court's admission of evidence of prior crimes, wrongs or acts is whether the trial court abused its discretion").

**[¶ 7.] 1. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION BY EXCLUDING EVIDENCE OF THE INJUNCTION AND CONTEMPT ORDER FROM THE STATE'S CASE–IN–CHIEF.**

[¶ 8.] The State argues that evidence of the injunction and contempt order is admissible under SDCL 19–12–5 or Federal Rule of Evidence 404(b). It argues that the permanent injunction and contempt order is evidence of a continuing plan to practice midwifery without a license.

■ [¶ 9.] "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." SDCL 19–12–5. The statute provides that such evidence may be admissible for other purposes, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." However, "prior bad acts evidence is not admissible to show that, merely because a defendant committed a similar offense on another occasion, he has a propensity to commit the offense charged." *State v. Steichen*, 1998 SD 126, ¶ 17, 588 N.W.2d 870, 874 (citing *State v. Moeller*, 1996 SD 60, ¶ 12, 548 N.W.2d 465, 471) (citations omitted).

■ [¶ 10.] Before other acts evidence may be admitted as evidence, the trial court must apply a two-prong analysis:

(1) Whether the intended purpose for offering the other acts evidence is relevant to some material issue in the case (factual relevancy); and

(2) Whether the probative value of the evidence is substantially outweighed by its prejudicial effect (legal relevancy).

*State v. Ondricek*, 535 N.W.2d 872, 873 (S.D.1995) (citing *State v. Steele*, 510 N.W.2d 661, 667 (S.D.1994)). This Court has stated that "it is preferable to delay admission of [other acts] evidence until the defense rests" or otherwise joins the issue. *Steichen*, 1998 SD 126 at ¶ 19, 588 N.W.2d at 875 (internal quotations and additional citations omitted).

■ [¶ 11.] The State argues that the injunction and contempt order are relevant to show knowledge or that the act was not a mistake or accident. These claims, however, are not relevant until Jones opens the door by claiming lack of knowledge, mistake or accident. The State also argues that the injunction and contempt order are relevant to prove a common plan or scheme. Again, however, Jones must open the door. When a defendant "denies doing the charged act, evidence of a common plan or scheme to achieve the act is directly relevant to refute this general denial." *Steichen*, 1998 SD 126 at ¶ 23, 588 N.W.2d at 875 (citing *Ondricek*, 535 N.W.2d at 875) (additional citations omitted).

[¶ 12.] The trial court determined that evidence of the injunction and contempt order could not be used in the State's case-in-chief. It held that: "Should the Defendant open the door, the State is instructed to request a hearing outside the presence of the jury so that the Court can determine the relevance and probative value of the evidence the State wishes to submit." If Jones opens the door at any time by claiming accident or mistake or any other stated exception, the State has the opportunity to prove the relevance of this evi-

dence.[1] The State has failed to show that the trial court abused its discretion in suppressing the evidence at this time.

### [¶ 13.] 2. WHETHER THE TRIAL COURT ERRED IN SUPPRESSING EVIDENCE OF THE POST–BIRTH TREATMENT AND DEATH OF A CHILD WHOSE BIRTH JONES ASSISTED.

[¶ 14.] The State argues that all evidence relating to the birth, treatment and death of a child whose birth Jones assisted is part of the res gestae of the case and may be presented as evidence to the jury. It argues that the practice of midwifery by Jones and the death of the child constitute a continuous course of events, thereby making it a part of the main transaction.

[¶ 15.] This Court has stated:

The res gestae embraces matters and statements immediately antecedent to, and having a causal connection with, the main transaction. The res gestae, as applied to a crime, includes the complete criminal transaction from its beginning or starting point in the act of accused until the end is reached. Continuing acts or a series of events, transpiring before the commission of the crime, and which lead up to and are necessary or helpful to an understanding of the main event, and tend to explain the conduct and purposes of the parties are admissible as part of the res gestae.

State v. Burtts, 81 S.D. 150, 155, 132 N.W.2d 209, 211–12 (1964) (citation omitted). Furthermore, " 'relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." SDCL 19–12–1.

[¶ 16.] This Court's definition of res gestae is clear. Because it embraces only those matters and statements "*immediately* antecedent ... to the main transaction" (emphasis supplied), the evidence of a death that occurred ten days after Jones' treatment of the child is not part of the res gestae. This restriction in no way ties the State's hands in proving the crime charged. The State is still free to show any care or conduct by the Defendant prior to the time the child was removed from her care. The evidence remaining for the State's use is sufficient for it to try the case without unfair prejudice to the Defendant.

[¶ 17.] Jones was indicted on charges of practicing midwifery without a license in violation of SDCL ch 36–9A. The medical treatment and death of one of the children is not relevant to prove the charges against Jones. Moreover, this evidence is not sufficiently related to the conduct charged so as to create a continuing act or transaction. The State has failed to show that the trial court abused its discretion in denying admission of this evidence at this time.

[¶ 18.] Therefore, we affirm.

[¶ 19.] KONENKAMP, Justice, and AMUNDSON, Retired Justice, concur.

[¶ 20.] GILBERTSON, Chief Justice, and ZINTER, Justice, dissent in part and concur in result in part.

---

1. In the event that Defendant or her attorney attempts to assert at any time during trial, as she asserted in a pretrial affidavit, that she was acting as a "certified professional midwife" or was acting under some similar capacity not legally authorized for the lawful practice of midwifery, then the issue would be properly joined and the State may seek to offer its other act evidence.

[¶ 21.] MEIERHENRY, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.

GILBERTSON, Chief Justice (dissenting in part and concurring in result in part).

[¶ 22.] I respectfully dissent on Issue One. When a criminal defendant enters a plea of not guilty, it is a complete denial of all the elements of the criminal charge. *State v. Steichen*, 1998 SD 126, ¶¶ 23–24, 588 N.W.2d 870, 875. That puts in issue each of the elements of the charge, all of which the state has to prove beyond a reasonable doubt. *Id.* Whether evidence of other acts is admitted and when, rests with the sound discretion of the trial court. *Steichen*, 1998 SD 126 at ¶ 19, 588 N.W.2d at 875 (citing *State v. Werner*, 482 N.W.2d 286, 290 (S.D.1992)).

> Generally, " 'it is preferable to delay the admission of [other acts] evidence until the defense rests.' " Once the defense rests, the trial court is then in the "best position to determine whether the issue sought to be proved by the extrinsic evidence is really in dispute, and if so, to assess its probative worth and possible prejudicial effect." However, admission of other acts evidence may be properly admitted during the State's case-in-chief. ("[W]here it is made clear at the outset of the trial that the defendant's principal defense is *lack of* knowledge or *intent*, and thus the issue is unarguably in dispute, the government may introduce the [other acts] evidence in its case-in-chief.") "[T]he order of proof is

within the sound discretion of the trial court[.]"

(Citations omitted) (emphasis added).

[¶ 23.] In a proper exercise of judicial discretion, the trial court obviously must be guided by a correct application of the applicable law. Here the trial court improperly followed the now-discarded thesis: "Evidence of a Defendant's other crimes or acts is generally not admissible unless an exception can be met." Rather, the trial court should have followed *State v. Wright*, 1999 SD 50, ¶ 13, 593 N.W.2d 792, 798, which established that SDCL 19–12–5 is a rule of inclusion, rather than exclusion. Failure to follow the proper law is per se an abuse of discretion.

[¶ 24.] Moreover, Jones has served notice that in this proceeding she intends to raise the same defense that she raised in *South Dakota Bd. of Nursing v. Jones*, 1997 SD 78, 566 N.W.2d 142, that is, the South Dakota statutes on midwifery do not control her activities. Compare her unsuccessful argument of no state regulation in *Jones* in that she was a "direct-entry midwife" rather than a "certified nurse midwife," *id.* at ¶ 18, 566 N.W.2d at 147 n. 6, with her affidavit in this case where she argues she is a "certified professional midwife" rather than a "certified nurse midwife" which once again she argues the state cannot regulate.[2]

[¶ 25.] Here the plea of not guilty and her affidavit make clear she denies intentionally committing any acts which violated SDCL ch 36–9A, which become a criminal offense under SDCL 36–9A–35. The State has to prove this intent beyond a reasonable doubt. If she chooses to present no

---

2. In her affidavit Jones also makes it clear that she has not changed her methods of midwifery since this Court's 1997 decision in *Jones:*

> I have practiced as a Midwife since September of 1984 and I have attended over 400 births to this date.

> In all of these births, I have not held myself out to be a Certified Nurse Midwife (CNM). I hold myself out as a Certified Professional Midwife (CPM).

defense, the State will be denied any opportunity to show that a circuit judge and this Court in *Jones* concluded and so told her, that her midwife activities violated SDCL ch 36–9A. Therefore, the trial court abused its discretion in not allowing admission of the injunction and contempt order in the state's case-in-chief. *Steichen*, 1998 SD 126 at ¶¶ 23–24, 588 N.W.2d at 875–76.

[¶ 26.] I can concur in result only on issue Two as the Court attempts to resurrect a definition for application of res gestae which this Court long ago discarded. The Court today attempts to apply the requirement of *State v. Burtts*, 81 S.D. 150, 155–56, 132 N.W.2d 209, 211–12 (1964) that the application of res gestae "embraces matters and statements immediately antecedent to ... the main transaction." The requirement of immediately antecedent is an artificial time requirement that may or may not have relevance to determining admissibility.

[¶ 27.] In *State v. Goodroad*, 1997 SD 46, ¶ 10, 563 N.W.2d 126, 130, this Court discussed at length the proper application of the doctrine of res gestae:

> The res gestae rule is well-recognized exception to rule 404(b). In *Floody*, we acknowledged the Second Circuit Court of Appeals' holding that " 'evidence' of uncharged criminal activity is not considered 'other crimes' evidence if it 'arose out of the same transaction or series of transaction of the charged offense[.]' "
> This court has ... approved the admission of other crimes where such evidence is 'so blended or connected' with the one[s] on trial ... that proof of one

incident involves the others[s]; or explains the circumstances; or tends logically to prove any element of the crime charged.

(citations omitted).

[¶ 28.] Recently in *State v. Andrews*, we again adopted the *Goodroad* standard of "same transaction or series of transactions as the charged offense." 2001 SD 31, ¶ 9, 623 N.W.2d 78, 81. Thus, while the same series of transactions may be immediately connected to the charged offense by time, it may just as well not be so directly connected.[3]

[¶ 29.] In the case now before us, the controlling factor is not the expiration of ten days time from the child's birth to its death, but rather that during that period of time, the child was out of the care of Jones before the child died.[4]

[¶ 30.] As such the trial court did not abuse its discretion in suppressing evidence of the child's death.

ZINTER, Justice (dissenting in part and concurring in result in part).

[¶ 31.] I join the dissent of Chief Justice Gilbertson on Issue 1 and his concurrence in result on Issue 2. I write to add two additional reasons for dissenting on Issue 1.

ISSUE 1

**WHETHER THE TRIAL COURT ABUSED ITS DISCRETION BY EXCLUDING EVIDENCE OF THE INJUNCTION AND CONTEMPT ORDER FROM THE STATE'S CASE–IN–CHIEF.**

[¶ 32.] Trial courts retain broad discretion in ruling on the admissibility of evi-

---

**3.** In *Goodroad*, we found the defendant's stealing of a car eleven days before the unlawful taking of a second car to be part of the res gestae. *Id.* at ¶ 13, 563 N.W.2d at 130.

**4.** The State makes no claim whatsoever that the death of the child is in any way causally

related to the delivery by Jones. Had there been evidentiary support to the contrary, it would have been an abuse of discretion by the trial court not to admit the death as part of the res gestae.

dence. Therefore, decisions to admit or exclude testimony will not be reversed absent a clear showing of abuse of discretion. *State v. Guthrie,* 2001 SD 61, ¶ 30, 627 N.W.2d 401, 414–415. However, "[w]hen a trial court misapplies a rule of evidence, as opposed to merely allowing or refusing questionable evidence, it abuses its discretion." *Id.* (citing *Koon v. United States,* 518 U.S. 81, 100, 116 S.Ct. 2035, 2047, 135 L.Ed.2d 392, 414 (1996)). In my judgment, the trial court misapplied Rule 404(b) and our cases in two respects.

### Other–Acts Evidence Is Admissible In The State's Case–in–Chief.

[¶ 33.] First, our cases establish that a defendant need not testify before other-acts evidence is admitted in the state's case-in-chief. A defendant need not testify if the pre-trial proceedings disclose that the defendant has raised a real dispute about an issue that makes the other-acts evidence admissible for a proper purpose. *State v. Werner,* 482 N.W.2d 286, 290–291 (S.D.1992). Moreover, because those proper uses for other-act evidence are limitless, the Rule 404(b) list of permissible purposes is nonexclusive. *State v. Wright,* 1999 SD 50, ¶ 14, 593 N.W.2d 792, 798. Therefore, if the injunction and contempt order are relevant to any non-character purpose that Jones has placed in issue, they are admissible in the state's case-in-chief.

[¶ 34.] In this case, Jones submitted a pre-trial affidavit in which she unequivocally declared her defense. She admitted attending the births, admitted practicing as a "midwife," but denied that she held herself out as a "Certified Nurse Midwife" and further denied that her conduct fell within the proscription against practicing midwifery without a license. Under those circumstances, the trial court misapplied Rule 404(b) and our cases when it summarily concluded that the injunction and

contempt findings were "*not relevant*" to show knowledge or absence of mistake (intent) "unless and until *the defendant testifies* that she did not know that what she did was prohibited or that it was a mistake or accident." (emphasis added). That decision, which only allowed the other-acts evidence if Jones opened the door by *testifying* about knowledge or intent, misapplied Rule 404(b) because it failed to consider the fact that the injunction and contempt order directly refuted Jones' declared defense that her type of practice was not prohibited by SDCL ch 36–9A and the statute with which she was charged.

[¶ 35.] The trial court's decision also reflects that it did not consider all of the rules that determine when other-acts is permitted in the state's case-in-chief. The trial court premised its decision on only one of the two applicable rules governing the use of other-acts evidence in the state's case-in-chief. The trial court relied on the rule of "preference" (expressed in *State v. Steichen,* 1998 SD 126, ¶ 19, 588 N.W.2d 870, 875) to wait for the admission of other-acts evidence until the defense opens the door at trial. The trial court, however, misapplied *Steichen* because the trial court's decision reflects that it did not consider the *Steichen* exception to the preference. More specifically, the trial court's decision reflects that it failed to consider the reason for the *Steichen* preference, and therefore, it failed to apply *Steichen's* exception to the preference: an exception under which other-acts evidence is admitted in the state's case-in-chief. *Steichen,* 1998 SD 126 at ¶ 24, 588 N.W.2d at 875 (further citations omitted).

[¶ 36.] A review of the trial court's application of *Steichen* must begin with the observation that the *Steichen* court's preference for requiring a defendant to open the door at trial was adopted from *Werner,* 482 N.W.2d at 290. *Werner* explained the

reason for the preference. *Werner* noted that it is generally "preferable to delay the admission of 404(b) evidence until after the defense rests *because it places the trial court in the best position to determine whether the issue sought to be proved by the extrinsic act evidence is really in dispute, and if so, to assess its probative worth and possible prejudicial effect."* *Werner*, 482 N.W.2d at 290 (citing *United States v. Estabrook*, 774 F.2d 284, 289 (8thCir.1985)) (emphasis added). Thus, the reason for the preference in delaying the admission of other-acts evidence is to give the trial court an opportunity to determine whether a legitimate purpose exists for use of other-acts evidence.

[¶ 37.] However, it is not always necessary for the defense to present its case before a trial court can make that determination. Therefore, *Steichen* and *Werner* adopted an exception to the preference. Under that exception: "where it is *made clear at the outset* of the trial that the defendant's principal defense is [a permissible purpose for use of other-acts evidence], and thus the issue is unarguably in dispute, *the government may introduce the [other-acts] evidence in its case-in-chief."* *Id.*, (further citations omitted); *Steichen*, 1998 SD 126 at ¶ 19, 588 N.W.2d at 875. Indeed, this Court applied this exception in *Werner* and held that other-acts evidence was admissible in the state's case-in-chief. It did so because that trial court

"had ample opportunity" in pre-trial proceedings[5] to ascertain that there was a dispute over an appropriate purpose for use of other-acts evidence. *Id.* The identical situation is present in the case now before us.

[¶ 38.] In this case, Jones has unequivocally declared through a sworn affidavit that she admits attending the births, but denies that her conduct constitutes the practice of midwifery within the meaning of the statute under which she is charged. Moreover, Jones' defense has remained unchanged from her position in prior litigation where she also admitted attending births, but denied that her attendance at births constituted the practice of midwifery without a license in violation of SDCL ch. 36–9A.[6] *See, South Dakota Bd. of Nursing v. Jones*, 1997 SD 78, ¶ 18 n. 6, 566 N.W.2d 142, 147 n. 6. Significantly, the trial court observed that this was Jones' defense. The trial court noted that Jones' contention was *"that the requirements of SDCL 36–9A–35 do not apply to her* as she is not and does not hold herself out to be a nurse midwife. She contends that she is a Certified, Professional Midwife and, *therefore, not subject to SDCL 36–9A–35."* (emphasis added). Notwithstanding this recognition of a defense that is directly refuted by the injunction and contempt order, the trial court's opinion does not reflect that Jones' sworn affidavit and her similar contention in the prior

---

**5.** In footnote 1, this Court adopts the trial court's error by requiring that Jones or her counsel must repeat, *at trial,* Jones' sworn pre-trial assertion that she was acting lawfully as a "certified professional midwife or under some other capacity" which made her conduct lawful under SDCL 36–9A–35. The Court's procedural impediment misapplies Rule 404(b) in cases like this where the defendant has, *at the outset,* made this defense the issue in the case. *See generally, Werner, supra; State v. Champagne*, 422 N.W.2d 840 (S.D.1988). This Court also overlooks the

fact that Jones' defense is unarguably at issue. The trial court expressly noted that Jones was contending that she acted in a capacity (a "Certified Professional Midwife") that made her conduct lawful under SDCL 36–9A–35, and Jones does not take issue with this finding on appeal.

**6.** Notwithstanding her denial in that case, we concluded that her conduct was a willful violation of the prohibition against practicing midwifery without a license in SDCL ch. 36–9A.

litigation was considered. Had this pre-trial record been considered on the 404(b) issue, it clearly demonstrated factual and legal relevancy to a real issue in dispute that Jones will raise at trial.

[¶ 39.] Under those circumstances, where Jones has unequivocally revealed her defense in pre-trial proceedings, the reason for the preference stated in *Steichen* and *Werner* is absent. When that reason for delaying admission of other-acts evidence is absent, our cases apply the exception that allows the admission of the other-acts evidence in the state's case-in-chief. *Werner*, 482 N.W.2d 286, 290; *Steichen*, 1998 SD 126, ¶ 19, 588 N.W.2d at 875.

[¶ 40.] Respected commentators confirm this conclusion. In cases like this where "it is obvious that an appropriate consequential fact will be in issue, [whether Jones' specific conduct in attending births constitutes the practice of midwifery in violation of SDCL 36–9A–35, a] trial court does not err by admitting other-crimes evidence as a part of the government's case-in-chief." 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence*, § 404.23(3) (2d ed 2002). Moreover, that rule is not diminished by the fact that practicing midwifery without a license may be a general intent offense. "Even in general intent crimes, the government can offer [such] other crimes evidence as part of its case-in-chief when it is obvious that the defense will raise [a non-character issue] as a defense." 22 Charles A. Wright & Kenneth W. Graham, *Federal Practice and Procedure*, § 5244 at 490 (1978). Under these circumstances, where it was made clear at the outset that Jones' defense was that her attendance at the births did not constitute the practice of midwifery as defined in SDCL ch 36–9A, the trial court misapplied Rule 404(b) by failing to consider the pre-trial record, by

failing to consider the reason for the *Steichen* preference, and by failing to apply the *Steichen* exception.

## Continuing Course of Criminal Conduct.

[¶ 41.] Alternatively, the trial court misapplied Rule 404(b) because it failed to consider the admissibility of the injunction and contempt citation to prove an obvious plan to engage in a continuing course of criminal conduct. Had the trial court considered that purpose, Jones' affidavit and her prior legal history made the injunction and contempt citation admissible in the state's case-in-chief to prove Jones' plan to engage in a continuing midwifery practice without a license.

[¶ 42.] Jones' pre-trial affidavit indicates that since 1984, she has attended over 400 births *and continues to do so to the date the affidavit was submitted in this case*. In 1997, Jones filed a similar affidavit claiming attendance at 150 births. *Jones*, 1997 SD 78, ¶ 18, n. 6, 566 N.W.2d at 147, n. 6. Given Jones' proclamation of a "larger continuing plan" to practice without a license, and given the fact that the present alleged crime is a part of that continuing course of criminal conduct, the prior acts are admissible in the state's case-in-chief. *Steichen*, 1998 SD 126, ¶ 25, 588 N.W.2d at 876. Applying the test we used in *Steichen*: if one "compar[es] the crimes for which [Jones] is charged with the other-acts evidence[, it] demonstrates [that] the crimes charged are a continuation of [Jones'] criminal conduct," and therefore, the other-acts are properly admitted to show the continuing course of criminal conduct. *Id.*

[¶ 43.] The trial court's opinion does not reflect that it considered Jones' continuing criminal conduct or the applicable exception to the preference stated in *Steichen* and *Werner*. Had the trial court considered those matters, the injunction

and contempt citation were not only relevant to refute Jones' declared defense, but also to prove her plan to engage in a continuing course of criminal conduct. Therefore, the trial court erred in its application of Rule 404(b), and it abused its discretion on Issue 1. *Guthrie,* 2001 SD 61, ¶ 30, 627 N.W.2d at 414–415.